## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**LYDIA BLAND-MCCULLOUGH**                                        **PLAINTIFF**

**v.**                              **Case No. 4:23-cv-00037-LPR**

**WILLIAM TAPLEY, Chief of Police,**
**in his Individual and Official Capacities;**
**and THE CITY OF CONWAY, ARKANSAS**                          **DEFENDANTS**

### ORDER

This case concerns alleged employment discrimination. Plaintiff Lydia Bland-McCullough used to work in the Conway Police Department. She believes that the Department unlawfully discriminated against her with respect to her pay because she is a woman and because she is African-American. She brings three federal claims against the City of Conway: (1) an Equal Pay Act claim; (2) a § 1983 claim for sex discrimination in violation of the Equal Protection Clause; and (3) a § 1983 claim for race discrimination in violation of the Equal Protection Clause.[1] She also brings the latter two claims against William Tapley in his personal capacity.[2] Tapley was Chief of the Conway Police Department for the final portion of Ms. Bland-McCullough's tenure.

Pending before the Court is Defendants' Motion for Summary Judgment.[3] Defendants seek summary judgment on all claims.[4] For the reasons discussed below, the Motion is GRANTED in its entirety.[5]

---

[1] *See* July 16, 2024 Hr'g Tr. (Final) at 3–5. Ms. Bland-McCullough also brings state-law claims that mirror each of her federal claims. *Id.* at 4. She concedes that each state-law claim is subject to the same substantive analysis to which its analog federal claim is subject. *Id.* at 4–5.

[2] *Id.* at 44. Claims brought against Chief Tapley in his official capacity are considered claims against the City of Conway. *See Rogers v. City of Little Rock*, 152 F.3d 790, 800 (8th Cir. 1998).

[3] Doc. 20.

[4] *Id.*

[5] For the same merits-based reasons that this Order grants summary judgment to Defendants on all federal claims, Defendants are entitled to summary judgment on each of the mirror-image state-law claims. The Court notes that

# BACKGROUND

When evaluating a defendant's motion for summary judgment, the Court must read the record in a very particular way. If a fact is undisputed—or not genuinely disputed—the Court adopts it.[6] If a fact is genuinely disputed (and material), the Court adopts the most pro-plaintiff version of that fact that a reasonable jury could find to have occurred.[7] The Court must then draw all reasonable inferences from the adopted "facts" in favor of the plaintiff.[8] Essentially, the Court constructs the most pro-plaintiff version of the record that a reasonable jury could possibly countenance.[9] Then, considering that version of the record, the Court analyzes whether the moving party is entitled to judgment as a matter of law.[10]

To aid courts in determining whether a particular fact is genuinely disputed or not, Federal Rule of Civil Procedure 56(c) requires a party asserting that a fact is genuinely disputed to support that assertion with citations to the record.[11] And, if such citations are not presented, Federal Rule of Civil Procedure 56(e)(2) authorizes the Court to consider the fact undisputed. The Eastern District of Arkansas's Local Rule 56.1, together with the operative Scheduling Order in this case, explains the procedure for presenting an asserted statement of undisputed material facts and any opposition to such statement.[12] Among other things, a non-moving party's opposition must "state

---

Defendants made additional arguments with respect to some of the state-law and federal-law claims. For example, Defendants make a statute-of-limitations argument with regard to some of Ms. Bland-McCullough's state-law claims. Br. in Supp. of Mot. to Dismiss (Doc. 21) at 19. Defendants also make a qualified-immunity argument and a custom-policy-practice argument with regard to some of Ms. Bland-McCullough's federal-law claims. *Id.* at 20–23. The Court doesn't need to, and thus does not, address these arguments.

[6] *See Smith v. Crittenden Cnty.*, No. 22-cv-00042, 2024 WL 2194847, at *3 (E.D. Ark. May 15, 2024).

[7] *See Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).

[8] *See id.*

[9] *See id.*

[10] *See Samuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797, 801 (8th Cir. 2006).

[11] Fed. R. Civ. P. 56(c)(1)(A).

[12] *See* E.D. Ark. Local Rule 56.1(a)–(b); Am. Final Scheduling Order (Doc. 17) ¶ 8.

with particularity that portion of the allegation denied" and "cit[e] to any evidentiary support for the denial."[13]  "All material facts set forth" in a statement of undisputed material facts "shall be deemed admitted unless controverted" as required.[14]

With the foregoing principles in mind, the Court will now relate the background facts for purposes of deciding the instant Motion.

## I.    Ms. Bland-McCullough's Tenure at the Conway Police Department

In March of 2008, Ms. Bland-McCullough was hired by the City of Conway as a Deputy Clerk for the Conway District Court.[15]  In 2011, she transferred positions, becoming an Evidence Technician with the Conway Police Department.[16]  An Evidence Technician is a non-uniformed civilian position that maintains and secures evidence, property, and patrol unit video tapes, and assists with acquisition and distribution of such materials and related equipment.[17]

When Ms. Bland-McCullough started as an Evidence Technician, her pay was roughly $11.60 per hour.[18]  The record does not reveal what her predecessor's pay rate was.  And because (it appears) she was the sole Evidence Technician during her time in that position, there are no contemporaneous wage comparators from that period.  In any event, Ms. Bland-McCullough's time as an Evidence Technician is not at direct issue in this case.  That is because, in November of

---

[13] Am. Final Scheduling Order (Doc. 17) ¶ 8.

[14] E.D. Ark. Local Rule 56.1(c).

[15] Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 1.

[16] *Id.* ¶ 2.

[17] *Id.*; Ex. 7 (Job Description) to Defs.' Statement of Undisputed Facts (Doc. 22-7) at 1–4.  Although this document contains the job description for the Lead Evidence Technician role, the document notes that the Lead Evidence Technician "performs [the] same work as those supervised . . . most of the time."  *Id.* at 3.  It is therefore reasonable to infer that an Evidence Technician's job duties mirror a Lead Evidence Technician's job duties minus the supervisory responsibilities.

[18] Ex. 3 (12/19/2011 Personnel Change Authorization) to Defs.' Statement of Undisputed Facts (Doc. 22-25).

2015, she was promoted to Lead Evidence Technician.[19]  She held this position from the end of 2015 to her retirement in 2021.[20]  And this is the time period on which Ms. Bland-McCullough focuses her claims.

Similar to an Evidence Technician, a Lead Evidence Technician is a non-uniformed civilian position.[21]  A Lead Evidence Technician is responsible for, *inter alia*:  (1) maintaining and securing all evidence, property, and patrol unit tapes; (2) assisting with the acquisition and distribution of materials and equipment; and (3) supervising other employees in the Evidence department.[22]  For her work in this role, Ms. Bland-McCullough was paid $15.26 per hour.[23]  Her pay did not change during her nearly six-year tenure in this role.[24]  And that was a source of considerable frustration for Ms. Bland-McCullough.

Each year between 2015 and 2021, Ms. Bland-McCullough sought a raise through her chain of command at the Conway Police Department.[25]  (This occurred at least six times.)[26] Although the ultimate decisionmakers with respect to pay are the City Council and Mayor, the

---

[19] Ex. 4 (11/1/2015 Personnel Change Authorization) to Defs.' Statement of Undisputed Facts (Doc. 22-26).

[20] Ex. E (Defs.' Resp. to Interrogs.) to Pl.'s Statement of Undisputed Facts (Doc. 33-1) at 5.

[21] Ex. 9 (Dep. of William Tapley) to Defs.' Statement of Undisputed Facts (Doc. 22-9) at 2–4 (referring to Ms. Bland-McCullough, then employed as Lead Evidence Technician, as a "civilian non-uniformed employee[]").

[22] Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 4.

[23] Ex. 6 (6/11/2021 Personnel Change Authorization) to Defs.' Statement of Undisputed Facts (Doc. 22-27).

[24] *See id.*; *see also* Ex. 2 (Dep. of Lydia Bland-McCullough) to Defs.' Statement of Undisputed Facts (Doc. 22-2) at 13.  To be clear, there is pretty strong evidence that Ms. Bland-McCullough's starting salary for the position was $14.31 per hour and that her ending salary was $15.26 per hour.  *See* Ex. 4 (11/1/2015 Personnel Change Authorization) to Defs.' Statement of Undisputed Facts (Doc. 22-26) (showing her wage upon promotion to the position was $14.31 per hour); Ex. 6 (6/11/2021 Personnel Change Authorization) to Defs.' Statement of Undisputed Facts (Doc. 22-27) (showing her wage upon retirement was $15.26 per hour).  This would mean that she at least received some raises—whether they were cost-of-living adjustments or otherwise—over the years.  But, on this record, that is a genuinely disputed (material) fact.  Ms. Bland-McCullough testifies clearly that she was never given any type of raise from 2015 through her retirement in 2021.  *See* Ex. 2 (Dep. of Lydia Bland-McCullough) to Defs.' Statement of Undisputed Facts (Doc. 22-2) at 13.  And, of course, whether Ms. Bland-McCullough was given a raise might bear on the discrimination issues being pressed in this case.

[25] Ex. 2 (Dep. of Lydia Bland-McCullough) to Defs.' Statement of Undisputed Facts (Doc. 22-2) at 13.

[26] *See id.*

senior command staff at the Police Department (including the Chief) can make recommendations on pay to the ultimate decisionmakers (including by way of a proposed annual budget).[27]  With respect to all raise requests prior to December of 2020, the record is silent as to whether the senior command staff at the Police Department requested a raise for Ms. Bland-McCullough.  If they ever did, the City Council did not approve it.[28]

Chief Tapley did not become Chief until 2020.[29]  He was not involved in any of the raise requests prior to becoming Chief.[30]  In December of 2020, Ms. Bland-McCullough and two other female civilian Police Department employees met with Chief Tapley to discuss the possibility of a pay raise for civilian Police Department employees.[31]  Chief Tapley explained to the three women that he did not have the authority to give pay raises, that the authority rested with the City Council and the Mayor, that he would take their request to the Mayor, and that raise requests needed to be in the proposed annual budget.[32]  There is no evidence in the record to suggest that, prior to this first meeting, Chief Tapley knew about Ms. Bland-McCullough's previous pay-raise requests.

In February of 2021, there was a second meeting on raises for civilian employees attended by Ms. Bland-McCullough, one of other civilian employees present at the first meeting, and Chief Tapley.[33]  At this meeting, Chief Tapley said that he had not yet spoken to the Mayor about

---

[27] Ex. 23 (Employee Handbook) to Defs.' Statement of Undisputed Facts (Doc. 22-23) at 66; Pl.'s Resp. to Defs.' Statement of Material Facts (Doc. 34) ¶ 10; Ex. 2 (Dep. of Lydia Bland-McCullough) to Defs.' Statement of Undisputed Facts (Doc. 22-2) at 4–5.

[28] See Ex. 2 (Dep. of Lydia Bland-McCullough) to Defs.' Statement of Undisputed Facts (Doc. 22-2) at 13.

[29] Ex. 9 (Dep. of William Tapley) to Defs.' Statement of Undisputed Facts (Doc. 22-9) at 13.

[30] See Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 11.  The Court deems this contention admitted because the legal objection is meritless and there is no factual opposition.

[31] Id. ¶ 8.

[32] Id. ¶¶ 9–10.

[33] Id. ¶ 12.

the raise request made by the three women at the December 2020 meeting.[34]  Long story short, Ms. Bland-McCullough was led to believe there had been no movement on the raise request.

Subsequent to this second meeting, Ms. Bland-McCullough informed her immediate supervisor, Lieutenant Aaron Lenderman, that she was retiring.[35]  She told Lieutenant Lenderman that her retirement was motivated by the lack of a pay increase.[36]  A reasonable jury could infer that Chief Tapley learned this information on or around February 4, 2021, when the Chief queried Lieutenant Lenderman about the content of an email Lenderman had forwarded to the Chief from Ms. Bland-McCullough.  The Chief asked, "[i]s she saying she is retiring in June??"[37]  Although the record does not reveal Lieutenant Lenderman's response, it is reasonable to infer that Lieutenant Lenderman provided the Chief all the information the Lieutenant knew (at that point) concerning Ms. Bland-McCullough's decision to retire.  To be clear, it does not appear that Ms. Bland-McCullough ever spoke directly to Chief Tapley about her choice to retire or her reasons for it.  But for purposes of summary judgment, the Court assumes that, by the end of the first week of February 2021, Chief Tapley knew Ms. Bland-McCullough intended to retire sometime in June of 2021 because of the failure to raise her pay.

A third meeting took place in mid-March of 2021.[38]  In attendance were Chief Tapley and all Admin I and Admin II civilian employees (including Ms. Bland-McCullough).[39]  At this

---

[34] *Id.*  The Court deems this contention admitted because Ms. Bland-McCullough's asserted dispute is not on-point.

[35] *Id.* ¶ 19.

[36] Ex. 2 (Dep. of Lydia Bland-McCullough) to Defs.' Statement of Undisputed Facts (Doc. 22-2) at 19.

[37] Ex. 11 (Email from William Tapley) to Defs.' Statement of Undisputed Facts (Doc. 22-11).

[38] Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 15.  We know the meeting took place on or before March 18, 2021.  That's because, on March 18, Ms. Bland-McCullough sent Chief Tapley an email thanking him for providing the information about not expecting pay raises in the foreseeable future.  *See id.* ¶ 16.  The Court deems this contention admitted because Ms. Bland-McCullough's objection is not well-taken.

[39] *Id.* ¶ 15.

meeting, Chief Tapley told everyone that "he did not expect raises for civilian employees in the foreseeable future based on the conversations he had with Mayor Castleberry."[40]

Then, on March 23, 2021, Ms. Bland-McCullough notified HR that her last day would be June 11, 2021.[41]  She also requested a retirement packet.[42]  And a few weeks later, on April 12, Ms. Bland-McCullough wrote an official notice to Lieutenant Lenderman to (1) inform him that she would retire on June 11, 2021 and (2) request that the Police Department hire a replacement prior to that date so that she could train the new hire.[43]  There is no hard evidence that Chief Tapley knew the specific day of her retirement.  But a reasonable jury could infer that Lieutenant Lenderman sent this official notification up the chain of command.

On May 10, 2021, the Police Department hired Mark Mushrush as Ms. Bland-McCullough's replacement.[44]  His starting pay was the same $15.26 per hour that Ms. Bland-McCullough had been paid as Lead Evidence Technician.[45]  Ms. Bland-McCullough trained Mr. Mushrush, and then she retired as planned on June 11, 2021.[46]

---

[40] Id.  Ms. Bland-McCullough denies that Chief Tapley's statement was, in fact, "based on conversations he had with Mayor Castleberry." Id.  But denying the truth of a statement is not the same as denying that the statement was made.  Ms. Bland-McCullough is thus deemed to have admitted that Chief Tapley told her and other employees that his conclusions were based on conversations with Mayor Castleberry.

[41] Id. ¶ 23.

[42] Ex. 12 (Lydia Bland-McCullough Email to HR) to Defs.' Statement of Undisputed Facts (Doc. 22-12).

[43] Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 24.  It appears that, at this time, there was an Evidence Technician named Ricky Whisenant working under the supervision of Ms. Bland-McCullough.  Defs.' Resp. to Pl.'s Statement of Undisputed Facts (Doc. 39) ¶ 4.  Mr. Whisenant had been hired as an Evidence Technician sometime in 2020.  Id.  The record does not reveal whether Mr. Whisenant applied for promotion to the Lead Evidence Technician position when Ms. Bland-McCullough retired.  But, if he did, he was not selected for it.

[44] Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 25.

[45] Id. ¶ 26.

[46] Ex. 6 (6/11/2021 Personnel Change Authorization) to Defs.' Statement of Undisputed Facts (Doc. 22-27); Defs.' Resp. to Pl.'s Statement of Undisputed Facts (Doc. 39) ¶ 2.  The parties dispute how much experience, skill, and education Mr. Mushrush had relative to the experience, skill, and education Ms. Bland-McCullough had.  See Defs.' Resp. to Pl.'s Statement of Undisputed Facts (Doc. 39) ¶ 2.  But, for purposes of this Motion and based on the specific legal arguments pressed by the parties, the dispute is not material at this stage of the proceedings.  So the Court will not resolve it.

II.    **Pay Raises Subsequent to Ms. Bland-McCullough's Retirement**

Imagine Ms. Bland-McCullough's surprise (and anger) when, less than two weeks after her retirement, the following occurred:  (1) the Mayor and the Salary Committee he had created unveiled a proposal to raise the pay of certain City positions, including the pay of the Lead Evidence Technician; and (2) based on the recommendation of the Mayor and his Committee, the City Council passed an Ordinance that raised the pay of certain City positions, including the pay of the Lead Evidence Technician.[47]   As a result, Ms. Bland-McCullough's replacement— Mr. Mushrush—received a pay raise less than a month after Ms. Bland-McCullough retired.[48]  His new pay rate was $35,000 per year.[49]

This same process occurred again a year later (in June of 2022), and the Lead Evidence Technician position received another pay increase.[50]  By that time, Mr. Mushrush had moved on, and a man named Ricky Whisenant had been promoted to succeed him.[51]  (As discussed in footnote 43 *supra*, Mr. Whisenant had originally been hired into the basic Evidence Technician position in 2020.)  So, as of the middle of 2022, Mr. Whisenant was being paid $42,000 per year for serving

---

[47] Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 27–44.  Ms. Bland-McCullough denies or objects to much of this, frequently at length.  *See id.*  But her objections are not well-taken and the facts laid out by Defendants have extensive support in the record.

[48] Ex. 20 (Conway Ordinance No. O-21-76) to Defs.' Statement of Undisputed Facts (Doc. 22-20).

[49] *Id.* at 3. By contrast, at the time of her retirement, Ms. Bland-McCullough had been making $31,740.80 per year as the Lead Evidence Technician.  Ex. 6 (6/11/2021 Personnel Change Authorization) to Defs.' Statement of Material Facts (Doc. 22-27) (annual salary calculated on a year's worth of 40-hour workweeks at $15.26 per hour).  It is also worth noting that the same Ordinance raised the pay for the Evidence Technician position.  Ex. 20 (Conway Ordinance No. O-21-76) to Defs.' Statement of Undisputed Facts (Doc. 22-20) at 3.  So Mr. Whisenant (who, as discussed in footnote 43 *supra*, was in the Evidence Technician role) received a pay raise to $33,000 per year.  *Id.*  That's also more than the $31,740.80 per year that Ms. Bland-McCullough was making as Lead Evidence Technician at the time of her retirement.  *See* Ex. 6 (6/11/2021 Personnel Change Authorization) to Defs.' Statement of Material Facts (Doc. 22-27).

[50] Ex. 22 (Conway Ordinance No. O-22-69) to Defs.' Statement of Undisputed Facts (Doc. 22-22) at 3.

[51] *See* Ex. B (Dep. of Lydia Bland-McCullough) to Resp. in Opp'n to Mot. for Summ. J. (Doc. 32-2) at 48.  The parties dispute how much experience, skill, and education Mr. Whisenant had relative to the experience, skill, and education Ms. Bland-McCullough had.  *See* Defs.' Resp. to Pl.'s Statement of Undisputed Facts (Doc. 39) ¶ 4.  But, for purposes of this Motion and based on the specific legal arguments pressed by the parties, the dispute is not material at this stage of the proceedings.  So the Court will not resolve it.

as the Lead Evidence Technician.[52]  That's over $10,000 more than Ms. Bland-McCullough had made per year for serving in the same role.[53]

One can certainly understand Ms. Bland-McCullough's reaction to all of this.  Recall that she had been unsuccessfully asking for raises since 2015.[54]  And to add insult to injury—at least in Ms. Bland-McCullough's mind—it appears that the Mayor and his Committee had been looking into the pay-raise issue since about February of 2021.[55]  Why hadn't Chief Tapley told her this?  Why had he let her retire over lack of a pay raise without even mentioning that a potential pay raise was being considered?  From Ms. Bland-McCullough's perspective, the timing and circumstances are hard to chalk up to coincidence.  An African-American woman is consistently refused pay raises, retires because she thinks she has been again denied a pay raise, is replaced by a white man who gets an almost-immediate pay raise that has been secretly planned for months, and then the white man's successor (another white man) gets another pay raise.  Not a good look.

Anyone hearing that chain of circumstances would be forgiven for speculating that unlawful discrimination has occurred.  But this Court can't proceed on speculation.  It needs to look at facts.  So, what does the record—read as it must be on summary judgment—show about the pay raises that occurred after Ms. Bland-McCullough's retirement?

Let's start with Chief Tapley's knowledge (or lack thereof) concerning the forthcoming pay raises.  The Mayor began exploring potential pay raises in December of 2020 when (after completing the 2021 budgeting process) he noticed that several positions in the City had salaries

---

[52] *See* Ex. 22 (Conway Ordinance No. O-22-69) to Defs.' Statement of Undisputed Facts (Doc. 22-22) at 3.

[53] *See* Ex. 6 (6/11/2021 Personnel Change Authorization) to Defs.' Statement of Undisputed Facts (Doc. 22-27).

[54] *See supra* p. 4.

[55] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 30.  This contention is deemed admitted because Ms. Bland-McCullough's asserted dispute is not on-point and is unsupported by the citations provided.

that were low in comparison to, and thus not competitive with, the same positions in comparable cities in Arkansas.[56]  The Mayor formed a Salary Survey Committee to review the feasibility of providing raises to the non-competitive positions.[57]  The Committee was comprised of the City of Conway's CFO, its HR Director, one City Council member, and one member from the community.[58]  The Mayor testified that he did not inform Chief Tapley (or any of the City's department heads except for the City's Finance Director) of the Committee's existence or the potential for forthcoming pay raises.[59]  And this testimony is consistent with Chief Tapley's testimony that he did not know about the Committee or the forthcoming pay raises until the June 22, 2021 City Council meeting (which was after Ms. Bland-McCullough had retired).[60]

Ms. Bland-McCullough disputes the fact that Chief Tapley did not know of the forthcoming pay raises prior to her retirement.[61]  But the dispute is not a genuine one.  Ms. Bland-McCullough points to no specific evidence that Chief Tapley knew of the Committee or the potential for pay raises prior to her departure.[62]  Instead, she argues that a jury could reasonably infer such knowledge because, at least from February 2021 through June 2021, "Tapley . . . claims to have been advocating for raises for non-uniformed personnel . . . and spoke to the Mayor . . . several times" about the issue.[63]  According to Ms. Bland-McCullough, "if [Chief Tapley] was having

---

[56] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) at ¶ 27.  The Court deems this admitted because Ms. Bland-McCullough's asserted dispute is not on-point and is unsupported by the citations provided.

[57] *Id.*  The Court deems this admitted because Ms. Bland-McCullough's asserted dispute is not on-point and is unsupported by the citations provided.

[58] *See id*. at ¶ 29.  The Court deems this admitted because Ms. Bland-McCullough's asserted dispute is not on-point and is unsupported by the citations provided.

[59] *See* Ex. 14 (Dep. of Bart Castleberry) to Defs.' Statement of Undisputed Facts (Doc. 22-14) at 5.

[60] *See* Ex. D (Dep. of William Tapley) to Resp. in Opp'n to Mot. for Summ. J. (Doc. 32-4) at 20–21.

[61] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 9.

[62] *See id.*

[63] *Id.*

repeated meetings [with the Mayor] where he was actually advocating for this, the logical inference is that [Chief Tapley] would have been told about [the Committee or the potential pay raises] by Mayor Castleberry."[64]

There are two problems with this line of disputation. One problem is that Ms. Bland-McCullough elsewhere asserts that "Chief Tapley [n]ever spoke to the Mayor regarding pay raises for Plaintiff or other non-uniformed employees . . . ."[65] If that is true, then the premise of Ms. Bland-McCullough's logical chain evaporates and there is nothing to even theoretically suggest Chief Tapley would have known of the Committee or the potentially forthcoming pay raises. In any event, even if we assume Chief Tapley was advocating for pay raises with the Mayor in the February–June 2021 timeframe, Ms. Bland-McCullough still faces a problem. The mere fact that a subordinate like Chief Tapley is advocating to his boss (the Mayor) for pay raises does not necessitate or even counsel the boss revealing the existence or work of a committee studying the feasibility of raises. There are plenty of reasons for a boss (the Mayor) not to reveal such information until a pay raise plan is finalized. In short, there is nothing but rank speculation to suggest that the Chief and Mayor were lying (or incorrectly recalling) when they both testified that the Mayor did not reveal the existence of the Committee or the potential pay raise plan to Chief Tapley prior to Ms. Bland-McCullough's retirement. A reasonable jury cannot, and does not, engage in speculation.[66] Accordingly, the record undisputably shows that Chief Tapley did not know about the potential pay raises at any time before the June 22, 2021 City Council meeting.

---

[64] *Id.*

[65] *Id.*

[66] It is also worth noting that there is no evidence to suggest that the Mayor or anyone on the Committee knew that Ms. Bland-McCullough was planning to retire in June because of the lack of a pay raise.

This means that Chief Tapley did not know about the potential pay raises at any time before Ms. Bland-McCullough's retirement on June 11, 2021.

Moving on to the reason for the changes in pay subsequent to Ms. Bland-McCullough's retirement, the record reveals a lot about the process that took place. The Committee's first meeting was on or around February 10, 2021.[67] At this meeting, the Mayor explained that he wanted the Committee to investigate the possibility of providing raises to the positions that fell below the average salary for comparable positions as shown in the 2021 Arkansas Municipal League Salary Survey.[68] The AML Salary Survey showed the average 2021 salaries for various positions in Arkansas cities with a population of 10,000 or more.[69]

Subsequent to the first meeting, one member of the Committee (the City's CFO) created Excel spreadsheets that contained a list of all the City's positions, the pay for each position, and where that pay ranked in the AML survey.[70] The Committee identified five positions for which the City's pay was in the bottom 20% of pay compared to that of the same positions in the other cities surveyed.[71] The Committee decided to recommend that all of the positions in this bottom 20% category receive raises.[72] The Lead Evidence Technician and the Evidence Technician

---

[67] *See* Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 30. The Court deems this admitted because Ms. Bland-McCullough's objection is not well-taken and her asserted dispute is not on-point and is unsupported by the citations provided.

[68] *Id.* ¶ 31. Ms. Bland-McCullough initially objected to this asserted fact as hearsay. *See id.* But, at the summary judgment hearing, she conceded (or at least withdrew) all of the hearsay objections she made in her Response to Defendants' Statement of Undisputed Facts. *See* July 16, 2024 Hr'g Tr. (Final) at 45–48. In light of her concession (or withdrawal) of her hearsay objections, this asserted fact is deemed admitted because Ms. Bland-McCullough's other objections are not well-taken and her asserted dispute is not on-point and not supported by the citations provided.

[69] Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 32. This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

[70] *Id.* ¶ 33. This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

[71] *Id.* ¶ 34. This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

[72] *Id.* ¶ 36. This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

positions were two of the jobs in this category,[73] and so the Committee recommended raises for them along with the other three jobs in this category.[74]

The Committee also identified a number of other positions where the pay was in the bottom 50% of cities surveyed.[75]  For the positions where the pay was not in the bottom 20% but was in the bottom 50%, a second member of the Committee devised a ranking system based on factors like (1) the difficulty of filling the position or retaining an employee in the position, (2) the need for specialized training to work in the position, and (3) how critical the position was to the City's functions.[76]  The CFO and a third Committee member scored the positions, and any position receiving more points than a specified cut-off would get a pay raise.[77]  Ultimately, this process led to pay raise recommendations for ten more City positions.[78]  The City Council adopted the plan as proposed by the Committee.[79]

This same basic process unfolded in 2022, using the 2022 AML Salary Survey.[80]  During that process, the Lead Evidence Technician position was again identified as being in the bottom

---

[73] *See* Ex. 17 (Grimes Decl.) to Defs.' Statement of Undisputed Facts (Doc. 22-17) at 154.  The Lead Evidence Technician pay ranked 15 out of 15 (i.e., dead last) compared to the other cities surveyed.  *Id.*

[74] *Id.*; Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 36.  This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

[75] *See* Ex. 17 (Grimes Decl.) to Defs.' Statement of Undisputed Facts (Doc. 22-17) at 154; *see also* Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 35.

[76] Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 37.  This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

[77] *Id.*  This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

[78] *Id.* ¶ 38.  This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

[79] *Id.* ¶ 44.

[80] *Id.* ¶ 48.  This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

20%.[81]  So the Committee recommended a pay raise and the City Council acted on the plan.[82] Twenty-two other positions were given raises at the same time.[83]

## DISCUSSION

The Court has already laid out the essentials of the summary judgment standard.[84]  To sum it up:  Summary judgment for the Defendants is appropriate if (but only if) no reasonable jury could find for Ms. Bland-McCullough on the read of the record that is most favorable to her.[85]  The propriety of summary judgment is claim-specific.  So, the Court now turns to the individual legal claims Ms. Bland-McCullough has brought.

## I.    Equal Pay Act[86]

The Court begins with the Equal Pay Act claim, which is a claim brought only against the City of Conway.  The Court begins here because Ms. Bland-McCullough believes this claim to be her strongest claim.  Indeed, at oral argument, Ms. Bland-McCullough took the position that if summary judgment is granted on the Equal Pay Act claim, then her other claims must fail as well.[87]

In the Eighth Circuit, to establish a prima facie case under the Equal Pay Act, "a plaintiff must show by a preponderance of the evidence that (1) she was paid less than a male employed in the same establishment, (2) for equal work on jobs requiring equal skill, effort, and responsibility,

---

[81] *See* Ex. 16 (Mabry-Williams Decl.) to Defs.' Statement of Undisputed Facts (Doc. 22-16) at 314.

[82] Pl.'s Resp. to Defs.' Statement of Undisputed Facts (Doc. 34) ¶ 49.  This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

[83] *Id.*  This fact is deemed admitted for the same reasons as set out in footnote 68 *supra*.

[84] *See supra* pp. 2–3.

[85] *See id.*

[86] As stated in footnote 5 *supra*, Ms. Bland-McCullough's federal-law and state-law wage discrimination claims are subject to the same analysis and rise or fall together.  This section thus addresses both claims.

[87] July 16, 2024 Hr'g Tr. (Final) at 29 ("Your Honor, I guess one thing I would say is that if you boil this case down to its bare essentials, it is going to be the Equal Pay Act claims.  If you find against me on the Equal Pay Act claims, the 1983 claims and 105 claims are gone.  You know, the easiest place for me to meet my burden of proof is in those Equal Pay Act claims because we have met a prima facie case at various points. . . .").

(3) which were performed under similar working conditions."[88]  Once a prima facie case has been established, "the burden then shifts to the defendant to prove one of four statutory affirmative defenses."[89]  Those four statutory affirmative defenses involve situations in which the existence of a wage disparity is attributable to "[1] a seniority system; [2] a merit system; [3] a system which measures earnings by quantity or quality of production; or [4] a differential based on any other factor other than sex . . . ."[90]

Here, the City concedes that Ms. Bland-McCullough has made out a prima facie claim under the Equal Pay Act.[91]  So the issue before the Court is whether the City is entitled to summary judgment on the strength of its affirmative defense.  And the crux of that affirmative defense is that the differential between what Ms. Bland-McCullough was paid and what her male successors were paid was based on a factor other than sex—that factor being the revisions to the pay scale spurred on by the City Council's review of the salary surveys.[92]  After due consideration, the Court concludes that, even on the most pro-Plaintiff read of the record possible, any reasonable jury would find for the City on that affirmative defense.  Here's why.

First, the only relevant comparators for purposes of the Equal Pay Act analysis are Ms. Bland-McCullough's successors in the Lead Evidence Technician position—Mr. Mushrush and Mr. Whisenant.  Ms. Bland-McCullough admits this, noting that she would not have an Equal Pay Act claim "[i]f they had not given a raise to [Mr.] Mushrush . . . ."[93]

---

[88] *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002).

[89] *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011).

[90] 29 U.S.C. § 206(d)(1).

[91] July 16, 2024 Hr'g Tr. (Final) at 7.

[92] Br. in Supp. of Mot. for Summ. J. (Doc. 21) at 6–7.

[93] July 16, 2024 Hr'g Tr. (Final) at 36.

Second, Mr. Mushrush was hired as Lead Evidence Technician at the same pay that Ms. Bland-McCullough was making at the time of her retirement.[94]  And Mr. Whisenant, who was in the (basic) Evidence Technician position, was making less money than Ms. Bland-McCullough at the time of her retirement.[95]  This is all as expected and does not suggest any pay discrepancy.

Third, the subsequent pay increases received by Mr. Mushrush and Mr. Whisenant were the obvious consequence of the Lead Evidence Technician position getting an overall pay bump—rather than a consequence of the sexes of those two employees.  The record ineluctably shows that the decision to raise the pay for the Lead Evidence Technician role was the result of a complex process based on the objective, nondiscriminatory criteria developed by the Salary Survey Committee based on the data from the salary surveys.[96]  And nothing in the record suggests there was any sex-discriminatory element to the process of commissioning the surveys, conducting the surveys, presenting the surveys, or composing or passing the ordinances that were informed by these surveys.

In fact, the record shows the exact opposite.  It shows that the City of Conway was engaging in a general evaluation of public employee salaries based on objective, nondiscriminatory criteria. It shows that the initiation of this evaluation process had nothing to do with Ms. Bland-McCullough.  It shows that the general evaluation revealed that Lead Evidence Technician was one of several positions determined to be non-competitive with similar positions in other municipalities.  And it shows that the City Council decided to increase the pay of the Lead Evidence Technician, along with the pay of several other positions, based on the results of this evaluation process.  In short, Ms. Bland-McCullough's suggestion that the City Council finally

---

[94] *See supra* p. 7.

[95] *See* Ex. 15 (Winningham Decl.) to Defs.' Statement of Undisputed Facts (Doc. 22-15) at 154.

[96] *See supra* pp. 12–14.

decided to increase the pay for the Lead Evidence Technician position (and then did so again the following year) because that position was suddenly occupied by a man is rank speculation. And a jury can't rely on speculation for its verdict.

Ms. Bland-McCullough attempts to jujitsu the salary survey into supporting evidence. She claims that it shows that certain "employees, which included [her], were underpaid . . . ."[97] But that begs the question: underpaid compared to whom? A violation of the Equal Pay Act requires more than mere poor pay or even underpayment compared to some general market rate. The underpayment must have been in relation to "a male employed in the same establishment" who performed "equal work . . . ."[98] In this case, there are no contemporaneous comparators, which means that anything to do with Ms. Bland-McCullough's pay—including the contention that she was generally underpaid—is only relevant to the Equal Pay Act analysis insofar as it compares her pay to that of her male successors. And, as the Court has just explained, the City has a rock-solid affirmative defense that the differential between her pay and her successors' pay was due to a factor other than sex. No reasonable jury could conclude otherwise.

Accordingly, the City is entitled to summary judgment on all of Ms. Bland-McCullough's Equal Pay Act claims.

## II.    42 U.S.C. § 1983

The Court next addresses the racial and sex discrimination claims brought under 42 U.S.C. § 1983. These claims are stated against both the City of Conway and Chief Tapley in

---

[97] Br. in Supp. of Resp. in Opp'n to Mot. for Summ. J. (Doc. 35) at 7.

[98] *Hunt*, 282 F.3d at 1029.

his personal capacity.[99]  Ms. Bland-McCullough accuses both the City and Chief Tapley of violating the Equal Protection Clause of the United States Constitution.

A threshold question when evaluating claims of this nature is whether the *McDonnell Douglas* burden-shifting framework is the appropriate test to use.[100]  The Court believes it is.  To the extent Ms. Bland-McCullough is suggesting that she has proffered direct evidence of intentional racial or sex discrimination, she is wrong.  There is no evidence here that "clearly points to the presence of an illegal motive."[101]  What Ms. Bland-McCullough characterizes as direct evidence is, at best, the type of indirect evidence that should be examined under the *McDonnell Douglas* framework.[102]  To wit, Ms. Bland-McCullough's so-called "direct evidence" is essentially that she repeatedly asked for a raise and did not receive one, that Chief Tapley never advocated for her to receive a pay raise after telling her that he would do so, and that her white male successors as Lead Evidence Technician (Mr. Mushrush and Mr. Whisenant) received raises. This screams out for application of the *McDonnell Douglas* test.

Under that framework, a plaintiff must first establish a prima facie case of discrimination.[103]  To establish a prima facie case, Ms. Bland-McCullough must show that "(1) [she] is a member of a protected class, (2) [she] met [her] employer's legitimate expectations, (3) [she] suffered an adverse employment action, and (4) the circumstances give rise to an

---

[99] As discussed in footnote 2 *supra*, the official-capacity claims against Chief Tapley are treated as claims against the City of Conway.

[100] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[101] *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

[102] *See Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010)

[103] *Id.*

inference of discrimination . . . ."[104]  Although the amount of evidence required to meet "the threshold of proof necessary to establish a prima facie case is minimal[,]" it is not nothing.[105]

If a prima facie case is established, "a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to . . . articulat[e] a legitimate, nondiscriminatory reason for the adverse employment action."[106]  Once such a reason is provided, "the presumption disappears and the plaintiff bears the burden of demonstrating that the employer's proffered reason is merely a pretext for intentional discrimination."[107]  Pretext may be demonstrated either by showing that the employer's explanation "has no basis in fact" or "by persuading the court that a prohibited reason more likely motivated the employer."[108]

Ms. Bland-McCullough does not make it past the prima-facie-case requirement on any of her § 1983 claims.  True, Defendants don't contest the first two elements.  Ms. Bland-McCullough is obviously a member of a protected class (both as a woman and as an African-American).  And there is no suggestion in the record or by Defendants that she was not meeting her employer's legitimate expectations.  But that still leaves the other elements.  As explained below, these elements present insurmountable obstacles for Ms. Bland-McCullough on all her § 1983 claims.

Let's start with the personal-capacity claims against Chief Tapley—both the racial and sex discrimination claims.  Ms. Bland-McCullough cannot show that Chief Tapley was responsible for an adverse employment action against her.  That is because the only possible adverse action at play in this case is the failure to give Ms. Bland-McCullough the pay raises that she desired.  And the

---

[104] *Id.* at 874.

[105] *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1022 (8th Cir. 1998).

[106] *Id.* at 1021.

[107] *Id.*

[108] *Cox v. First Nat. Bank*, 792 F.3d 936, 939 (8th Cir. 2015) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011)).

record shows that Chief Tapley did not control her rate of pay and did not have the power to give raises.[109]    That is, Chief Tapley cannot have caused Ms. Bland-McCullough "some injury respecting her employment terms or conditions" because he had no control over the terms or conditions of her employment at issue in the instant case—specifically, her pay.[110]

Ms. Bland-McCullough suggests a different adverse action with respect to Chief Tapley: constructive discharge.  She says that the continued low pay combined with the failure to give her a raise caused intolerable working conditions that were designed to force her to quit.  After all, she speculates that Chief Tapley knew—but did not reveal to her—that that a raise was coming soon after she was scheduled to resign.  This is an incredibly weak argument.  First, Chief Tapley did not control her rate of pay or have the power to give raises, so he couldn't be the person who constructively discharged her.  Second, Chief Tapley did not know of the coming structural pay raises being considered by the City, so Ms. Bland-McCullough can't credibly contend that he was withholding that information to get her to resign.  Third, and most importantly, the failure to raise Ms. Bland-McCullough's pay from roughly $32,000 a year is nowhere close to the type of objectively intolerable conditions that the Eighth Circuit requires to find constructive discharge.[111]

---

[109] *See supra* p. 4–5.

[110] *Muldrow v. City of St. Louis*, 601 U.S. 346, 359 (2024).  There is some evidence that Chief Tapley did not "go to bat" for Ms. Bland-McCullough by transmitting her request and advocating for it.  But that is not, in and of itself, an adverse action.  *See Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024).  ("An adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment.").

[111] *Cf. West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995) ("[F]rustration and embarrassment at not being promoted do not make work conditions sufficiently intolerable to constitute constructive discharge.").  The low pay Ms. Bland-McCullough endured during her tenure as Lead Evidence Technician is not enough, either; in general, the type of working conditions the Eighth Circuit has found intolerable look nothing like what Ms. Bland-McCullough experienced.  *See, e.g.*, *Bergstrom-Ek v. Best Oil Co.*, 153 F.3d 851, 858 (8th Cir. 1998) (finding evidence of intolerable working conditions sufficient to support a jury verdict where pregnant plaintiff's boss constantly pressured her to have an abortion and made her perform work that plaintiff believed could harm her pregnancy); *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 574–75 (8th Cir. 1997) (holding a reasonable jury could find intolerable working conditions where plaintiff was subjected to constant sex-based harassment from her coworkers); *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 285 (8th Cir. 1993) (finding intolerable working conditions where a female employee was subjected to repeated sexual harassment from her boss, including his brandishing a gun and threatening to rape her).  And the Eighth Circuit has declined to find intolerable working conditions in arguably worse situations than the one Ms. Bland-McCullough was in while working for the Conway Police Department.  *See,*

Bottom line: to whatever extent Ms. Bland-McCullough suffered an adverse employment action, it's simply not attributable to Chief Tapley.  No reasonable jury could conclude otherwise. So, Ms. Bland-McCullough can't make the required adverse-action showing to state a prima facie case of either sex-based or race-based discrimination against Chief Tapley in his personal capacity. Chief Tapley is therefore entitled to summary judgment on all personal-capacity § 1983 claims brought against him.

But what of the claims against the City of Conway, which is the entity that set pay rates and had the power to give raises?  Even here, there is still a potential adverse-action problem for Ms. Bland-McCullough.  Ms. Bland-McCullough does not allege that the original setting of the pay rate for the Lead Evidence Technician position was discriminatory.  Instead, she is alleging that the failure to raise her pay over the course of her six-year tenure was discriminatory.[112]  Even accommodating for the Supreme Court's recent decision in *Muldrow*, it is uncertain that keeping an employee's salary static amounts to an adverse action.[113]

The Court need not resolve that thorny question.  Assuming *arguendo* that keeping an employee's salary static constitutes an adverse action, no reasonable jury could conclude that "the surrounding circumstances give rise to an inference of discrimination" as a reason for this action.[114] It is true that the 2021 AML Salary Survey shows that Ms. Bland-McCullough was paid less than her counterparts in the other cities surveyed (all of which were Arkansas cities with populations

---

*e.g.*, *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933–36 (8th Cir. 2002) (finding that, even in the light most favorable to plaintiff, working conditions were not intolerable despite plaintiff being subjected to "offensive and disrespectful" sex-based harassment).

[112] Ms. Bland-McCullough is also alleging, as the Court has noted, constructive discharge.  But that theory does not get her anywhere for the reasons the Court already explained above.  *See supra* pp. 20, 20 n.111.  Indeed, she all but conceded this at oral argument.  *See* July 16, 2024 Hr'g Tr. (Final) at 40.

[113] *See Cole*, 105 F.4th at 1114.

[114] *See Lake*, 596 F.3d at 874.

above 10,000).[115]  But the record does not reveal the race or sex of her counterparts in the other cities surveyed.  Nor does it reveal when those counterparts' pay rates were set.  Without this information, the mere fact that Ms. Bland-McCullough's salary was the lowest among her counterparts is not enough, on its own, to give rise to an inference of racial or sex discrimination.

It is also true that Ms. Bland-McCullough's successors (both white men) ended up getting paid significantly more than Ms. Bland-McCullough was paid for the same work.  At first blush, and devoid of context, this type of disparity could raise a sufficient discriminatory inference to mount a prima facie case.  But, for the reasons explained above, the pay disparity between Ms. Bland-McCullough and her successors does not raise such an inference on this record.[116]  The Court will not repeat that analysis here, but will repeat its conclusion:  No reasonable jury could find that the pay disparity was based on the race or sex of the employees at issue (including Ms. Bland-McCullough).  To the contrary, any reasonable jury would find that the pay disparity was the result of an objective, non-discriminatory, and across-the-board process to provide salaries which were more comparable to those paid by other cities.  The pay disparity thus does not create an inference of discrimination in the circumstances of this case.

Accordingly, and because no other evidence gives rise to an inference of discrimination, Ms. Bland-McCullough cannot make out a prima facie case of either race or sex discrimination against the City.  The City of Conway is therefore entitled to summary judgment on all § 1983 claims.

---

[115] Ex. 15 (Winningham Decl.) to Defs.' Statement of Undisputed Facts (Doc. 22-15) at 154.

[116] *See supra* pp. 15–17.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Motion for Summary Judgment (Doc. 20) in its entirety. Judgment will be entered for Defendants on all claims, and this case will be CLOSED.

IT IS SO ORDERED this 20th day of March 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE